Jo Ann HATLESTAD, individually, and as Trustee of the Jo Ann McClaflin Trust, Appellant,

v.

PETROCORP INCORPORATED, Appellee.

No. 83947.

Supreme Court of Oklahoma.

Sept. 24, 1996.

Rehearing Denied Dec. 20, 1996.

Richard K. Goodwin, Lawrence & Ellis, P.A., Oklahoma City, for Appellant.

Martha Martin, Gregory L. Mahaffey, Mahaffey & Gore, P.C., Oklahoma City, for Appellee.

## MEMORANDUM OPINION

HARGRAVE, Justice.

This case presents an appeal from a hotly-contested proceeding before the Oklahoma Corporation Commission, which resulted in the establishment of the Hunter (Misener) Unit covering parts of sections 6, 7, 8 and 17, Township 27 North, Range 10 West, Alfalfa county, Oklahoma, and approval of the plan of unitization submitted by Petrocorp Incorporated. Only one party, the appellant Jo Ann Hatlestad, has appealed from the Commission's order.

The appellant is the owner of the surface and minerals of an approximately 66–acre

tract designated "Tract 1" in the 1083–acre unit, and feels that the participation formula for the unit is unfair to Tract 1.[1] Because Tract 1 never has had a well drilled on it, the owner feels that the formula used is unfair to Tract 1 because the formula relies heavily on oil produced and mid-perforation data from existing wells. Appellant believed that more weight should have been given to Tract 1's position on the reservoir as being potentially the highest structure there.

As issues on appeal, appellant argued that the unitization plan proposed by Petrocorp did not utilize a formula for apportionment and allocation of unit production as required by Title 52 O.S. § 287.4(b), that the plan included nonproductive lands that are not needed for the unit, that the plan did not consider the value of Tract 1 in relation to like values of other tracts in the unit, that the plan did not consider gas production as required by § 287.4(b), and that the plan was not supported by the evidence because it was based on a compromise map.

The Court of Appeals, without citation of authority, affirmed the Commission order creating the Hunter Unit, but proceeded to revise the formula for figuring Tract 1's participation. The Court of Appeals determined that the allocation of 7,775 barrels of oil to Tract 1 was not an equitable share of the projected production, nor fair compensation for involuntary inclusion in the unit. They determined that Tract 1 should be compensated on the basis of the total number of barrels of oil in place allocated to her tract times the rate of recovery projected for the unit, for a total of 20,933 barrels. The plan uses a formula based on the acreage percentage that each tract bears to the total unit times the projected unit recovery of 4,826,506 barrels. The Court of Appeals felt that because there was no well on Tract 1, any reasonable question about potential production from the tract should be resolved in favor of Tract 1.

Both sides sought certiorari because the formula used by the court of appeals would have the effect of unbalancing all the other tracts in the unit and would result in a different formula being applied to Tract 1 only. We granted certiorari and now affirm the order of the Commission.

The statutes governing unitized management of common sources of supply are Title 52 O.S.1991 § 287.1 et. seq. Section 287.4 provides that each plan of unitization shall contain fair, reasonable and equitable provisions for:

"(b) The division of interest or formula for the apportionment and allocation of the unit production, among and to the several separately-owned tracts within the unit area such as will reasonably permit persons otherwise entitled to share in or benefit by the production from such separately-owned tracts to produce or receive, in lieu thereof, their fair, equitable and reasonable share of the unit production or other benefits thereof. A separately-owned tract's fair, equitable and reasonable share of the unit production shall be measured by the value of each such tract for oil and gas purposes and its contributing value to the unit in relation to like values of other tracts in the unit, taking into account acreage, the quantity of oil and gas recoverable therefrom, location on structure, its probable productivity of oil and gas in the absence of unit operations, the burden of operation to which the tract will or is likely to be subjected, or so many of said factors, or such other pertinent engineering, geological, or operating factors, as may be reasonably susceptible of determination ..."

Extensive testimony was taken before the Administrative Law Judge for at least eight days. Attempts were made at those hearings, as well as at proceedings before the appellate Administrative Law Judge and the Corporation Commission *en banc*, to show that the reservoir perimeter was calculated on the basis of enhanced working interest recovery for Petrocorp and certain other working interest owners, rather than for the

---

1. On appeal, appellant argued against inclusion of Tract 1 in the unit and wanted Petrocorp to drill a well on Tract 1, under which appellant owns 100% of the minerals. In her petition for certiorari, appellant states that she is not arguing against her tract being included in the unit as long as her tract is treated fairly and based upon a plan supported by substantial evidence.

benefit of all owners. Opponents suggested alternative plans in order to prevent their exclusion from the unit. Arguments were made that no unit should be formed at all because primary production continued to effectively drain the reservoir.

Data from existing wells was used to establish the size of the unit and to calculate oil in place, comprising approximately 57% of the formula applied by the Commission. Evidence reflected that the Misener sand underlies Tract 1, necessitating its inclusion in the unitization plan for the prevention of waste. Evidence reflected that drilling a well on Tract 1 would be detrimental to the unit because of the effect on reservoir pressure and that a well drilled there would need to be shut-in. Evidence reflected that there is both a dry hole near Tract 1 and a good producer near Tract 1. Evidence reflected that using data from existing wells was necessary for formation of the unit. Data from an existing well, the John, was relied upon by appellant as evidence of her tract's value to the unit.

██ Orders of the Corporation Commission will be affirmed if they are supported by substantial evidence. *H & L Operating Co. v. Marlin Oil Corp.*, 737 P.2d 565 (Okla. 1987); *El Paso Natural Gas Co. v. Corporation Commission*, 640 P.2d 1336 (Okla.1981). Substantial evidence means that the evidence supporting the order furnishes a substantial basis of facts from which the issue could be reasonably resolved. *Samson Resources Co. v. Oklahoma Corporation Commission*, 742 P.2d 1114 (Okla.1987). After reviewing the record, we find that there was substantial evidence supporting the Commission order.

Petrocorp's witness testified that four parameters or factors were used in Petrocorp's formula: 1) current production, measured by the July, 1992 oil rate (when all wells were on line and producing at full allowables); 2) the unit area comprised by each tract; 3) original oil in place, measured by the hydrocarbon pore volume map prepared by the working interest owners' technical committee; 4) remaining oil for the unit as of May 1, 1993, allocated to each tract by looking at the perforations in each well at mid-perforation and calculating the recovery for each of those

wells, taking into account primary and secondary remaining reserves by tract. Petrocorp's witness testified that their technique for calculating remaining oil was a common technique used for sands that have high permeability and strong water drives. He testified that they anticipated trying to maintain the pressure by reinjecting the water. This technique took a series of maps for original oil in place and moved up the oil/water contact as it moved every five feet, and calculating the recovery for each of the wells for each of the tracts for every movement. Petrocorp's witness testified that some additional value and credit was given for those tracts having some remaining primary production. Petrocorp's witnesses testified that the plan submitted was for the prevention of waste and protection of correlative rights.

Witnesses in opposition testified that the plan should not be adopted because the oil reservoir could be effectively drained in primary recovery. Opponents testified that a two-phase plan that would align participation in the Hunter Unit with owners under the spacing unit and then encompass different participation formulas in Phase II should be used. The administrative law judge was in favor of a two-phase plan, but said that he did not know how one could be implemented, even considering the voluminous evidence before him.

The appellate administrative law judge found in favor of the Petrocorp application and the Corporation Commission *en banc* affirmed the appellate administrative law judge. The Commission approved the Petrocorp plan, and ordered creation of the Hunter (Misener) Unit to conduct enhanced recovery operations in the Misener Sand common source of supply. The Court of Appeals affirmed the Commission's order approving the unit, but modified Tract 1's share. There was testimony that Tract 1 was important to the unit. There was testimony from both sides, however, that a well drilled in Tract 1 would need to be shut-in so as not to deplete reservoir pressure, and that to drill a well and immediately shut it in would be wasteful. Mr. Goode, who opined that Tract 1 was not being treated fairly under the plan because of its lack of a well-bore, also testified that he

felt that Tract 1 may not be as high a point of the formation as anticipated and that it is "speculative as to what is present in Tract 1." Mr. Goode also testified that another tract in the unit was treated like Tract 1 as a non-wellbore tract. The statute requires that each separately-owned tract's share shall be measured by the value of such tract for oil and gas purposes and for its contributing value to the unit, in relation to like values of other tracts in the unit. Petrocorp points out that the contributing value of a tract with a well on it necessarily will be different from one with no well on it.

In *Chenoweth v. Pan American Petroleum Corporation,* 382 P.2d 743 (Okla.1963), the unitization participation formula assigned 50% of oil production to those tracts having producing wells in the Oil Creek sand, and the remaining 50% of oil production was assigned to all tracts in proportion to their acre-feet of production sand under each tract. The application also contained a schedule of the percentage of each tract's participation in the production due to the presence of a well, and a calculation of the acre-feet of productive sand. The owner of Tract 6 of that unit complained that well participation was not given to Tract 6, but that the proof showed the acre-feet of sand under their tracts to be greater than that used in fixing the tracts' participation. After noting that both sides had expert witnesses who testified as to their interpretation of technical data and that the Commission chose to accept the evidence of the applicant, we found that there was substantial evidence to support the Commission's conclusions. *See also, Palmer Oil Corp. v. Phillips Petroleum Co.,* 204 Okla. 543, 231 P.2d 997, 1009 (1951), where it was asserted that actual drilling on the tracts within the unit was required and we found that actual drilling upon the undrilled tracts was not required by the statute or by law.

The Commission approved the Petrocorp plan for the Hunter (Misener) Unit after reviewing voluminous evidence. Having reviewed the record, we find that there was substantial evidence on which to base the Commission's order.

**CERTIORARI HAVING BEEN GRANTED PREVIOUSLY, THE OPINION OF THE COURT OF APPEALS IS VACATED AND THE CORPORATION COMMISSION'S ORDER # 384429 IS AFFIRMED.**

All Justices concur.